UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTIE L. NAQUIN** | **CIVIL ACTION** |
| **VERSUS** | **No. 22-543-JWD-SDJ** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 14, 2024.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CHRISTIE L. NAQUIN**

**VERSUS**

**COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION**

**CIVIL ACTION**

**No. 22-543-JWD-SDJ**

## REPORT AND RECOMMENDATION

In this action, Plaintiff Christie L. Naquin seeks judicial review of a final decision of the Commissioner of the Social Security Administration, pursuant to 42 U.S.C. § 405(g), denying Plaintiff's application for a period of disability and supplemental security income benefits under Title II of the Social Security Act. (R. Doc. 1).[1]

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for supplemental security income benefits (Tr. 177), alleging a disability onset date of April 30, 2020. (Tr. 178). After Plaintiff's claim was initially denied (Tr. 85), she requested a hearing before an Administrative Law Judge (Tr. 100), which was held on November 1, 2021 (Tr. 30). On January 25, 2022, the ALJ issued an unfavorable decision (Tr. 16), finding that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 27). After Plaintiff's request for review (Tr. 174) was denied by the Appeals Council on June 7, 2022 (Tr. 1), the ALJ's decision became the final decision of the Commissioner for purposes of

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number] at [page number]). References to the record of administrative proceedings filed in this case (R. Doc. 12) are designated by: (Tr. [page number]).

judicial review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…."). Plaintiff then appealed the Commissioner's final decision, which is now before the Court for review. (R. Doc. 1).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Substantial evidence will not be found, however, when "there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

Conflicts in the evidence are for the Commissioner and not the Court to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence or try the case de novo. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."). If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). But if the Commissioner fails to apply the correct legal standards or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). The burden is on the claimant (plaintiff) throughout the first four steps to prove disability. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).

First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, the claimant must show his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, the ALJ must conclude the claimant is disabled if the claimant proves that his or her impairments meet or medically equal one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. § 416.920(d) (same); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

If the claimant is successful at all four of the preceding steps, then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. *See* 20 C.F.R § 404.1520(g)(1); 20 C.F.R. § 416.920(g)(1). If the Commissioner proves other work exists that the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here the ALJ made the following determinations:

**Step 1:** Plaintiff had not engaged in substantial gainful activity since April 30, 2020, the alleged date of onset.

**Step 2:** Plaintiff had the following severe impairments: type 2 diabetes mellitus, seasonal allergic rhinitis, myalgia, obesity, depressive disorder, and anxiety disorder.

**Step 3:** Plaintiff did not have impairments that met or medically equaled the severity of a Listed impairment. (20 C.F.R. Part 404, Subpart P, Appendix 1).

**RFC:** Plaintiff retained the residual functional capacity (RFC) to perform medium work with standing and/or walking for a total of six hours in an eight-hour workday and sitting for six hours in an eight hour workday, except that she must avoid concentrated exposure to pulmonary irritants. She could perform simple, routine, and repetitive tasks of unskilled work in a low stress environment.

**Step 4:** Plaintiff had no past relevant work.

**Step 5:** Considering Plaintiff's age ("younger individual"), education (at least high school), work experience (none relevant), and RFC (medium work), a significant number of jobs existed in the national economy that Plaintiff could perform based on application of the Medical Vocational Guidelines.

(Tr. 18-27).

## IV.   ARGUMENTS OF THE PARTIES

In support of her appeal, Plaintiff makes one primary argument: that the ALJ failed to properly develop the record. (R. Doc. 20 at 7). Specifically, Plaintiff takes issue with the ALJ's assessment of her mental abilities. Plaintiff asserts that the "medical evidence is scant", containing "only the psychological consultative examination… and treatment records from Plaintiff's primary care facility". (R. Doc. 20 at 8). Plaintiff further asserts that "despite recognizing that Plaintiff

suffered from both severe mental and physical impairments, the ALJ made no further efforts to develop the record". (R. Doc. 20 at 9). "[T]he ALJ rejected the consultative examiner's findings regarding Plaintiff's impaired intellectual and mental abilities by finding that the examination results were unreliable, not that Plaintiff did not have limitations cause by her impairments." (R. Doc. 20 at 9). Plaintiff asserts that this exam and the third-party functional report by Plaintiff's neighbor "paints a picture of a severely intellectually limited adult who relied completely on her neighbor's intellectual abilities to survive". (R. Doc. 20 at 9). Thus, Plaintiff argues, it is "unclear how the ALJ determined Plaintiff was capable of simple, routine, and repetitive unskilled work when the evidence presents a woman who cannot read, count money, or find her own way home." (R. Doc. 20 at 9). Plaintiff argues that the ALJ was obligated to further develop the record in order to properly determine Plaintiff's limitations, and that failure to order a consultative exam constitutes reversible error when such an evaluation is necessary to make an informed decision. (R. Doc. 20 at 9). Finally, Plaintiff argues that the ALJ formulated an RFC without any medical opinions, and that this failure to develop the record is particularly harmful in this case because "as argued at hearing, the evidence suggests that Plaintiff's intellectual capabilities satisfy the parameters of Listing 12.05, Intellectual Disorder." (R. Doc. 20 at 10).

In opposition, the Commissioner argues that it is the Plaintiff's burden to prove that she is disabled, and that when Plaintiff does not provide all available evidence, the ALJ must make a determination based on the evidence provided. (R. Doc. 21 at 4). The Commissioner further argues that Plaintiff's attorney attested that the evidence in the record at the time of the hearing was complete, except for records provided after the hearing—which the ALJ accepted and incorporated into his decision. (R. Doc. 21 at 5). The Commissioner asserts that Plaintiff did not raise the issue of an additional consultative examination until instant appeal. (R. Doc. 21 at 5). The Commissioner

further states that an ALJ is only *required* to obtain further medical evidence when there is not sufficient evidence in the record to support a decision; and there was sufficient evidence on which the ALJ could make a determination. (R. Doc. 21 at 5). The Commissioner argues that failure to develop the record is only reversible error if the Plaintiff can show that this failure was prejudicial. (R. Doc. 21 at 6). Because Plaintiff has not shown any evidence that another consultative examination would indicate that Plaintiff is disabled, the Commissioner claims, the final decision should stand. (R. Doc. 21 at 6). Finally, the Commissioner outlines the evidence that the ALJ considered in his determination, arguing that there was indeed sufficient evidence in the record to make a determination regarding Plaintiff's disability. (R. Doc. 21 at 7-10).

## V. DISCUSSION

The Fifth Circuit has explained that because hearings under the Social Security Act are non-adversarial, "[t]he hearing examiner has the duty…to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir.1981) (citation omitted). This does not mean, however, that the claimant has no obligation or responsibility to submit evidence. Indeed, the responsibility "for securing evidence of disability ... is clearly on the claimant." *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981).

To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for him to make an informed decision. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). As long as such evidence exists, the ALJ need not supplement the record with additional evidence. *See* 20 C.F.R. §§ 404.1516, 416.916; *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir.1989). The court may reverse the ALJ's decision if the claimant can show that "(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir.2012). To establish prejudice,

a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

Here, the record before the ALJ included medical records (Tr. 296-398, 407-550); function reports filled out by Plaintiff's friend and neighbor, Mary Elizabeth "Liz" Noel (Tr. 213, 252); SSI application and function report completed by hand by Plaintiff herself (Tr. 177, 221); and field office disability reports (e.g., Tr. 199).[2] There are several notable inconsistencies in the record. Particularly, Plaintiff claims that she cannot read (*see, e.g.,* Tr. 399), but she completed the application for SSI and adult function report in her own hand (Tr. 177, 221) and answered "Yes" to the question "Can you read and understand English?" on a disability report (Tr. 199). She reported to the consultative examiner that she cannot use a computer (Tr. 399), but the functional reports by both Plaintiff and Liz Noel indicate that she regularly uses a computer at home (Tr. 214, 227).

At Step Two, the ALJ considered that "moderate intellectual disability" was noted by a social worker in Plaintiff's treatment records, but noted that no formal assessment or testing was done to support a diagnosis. (Tr. 19). The ALJ further notes that while Plaintiff's consultative psychological exam[3] showed an IQ score of 41,[4] the examiner opined that Plaintiff's effort was inadequate:

> [R]esponse validity was studies as it can account for a large proportion of the variance in test findings…. [Plaintiff] appeared to be a limited historian and she shoed limited cooperation with test procedures…. Her effort with cognitive test items was not adequate. She made near miss responses. She would not try some test items. She seemed to give up easily. Her reliable digit span was not adequate…. The results of the examination were felt to be an unreliable estimate of her cognitive

---

[2] This is a non-exhaustive list of relevant evidence in the record.
[3] A mental status assessment referred by the Social Security Administration specifically for the purpose of determining benefits eligibility. (Tr. 399).
[4] The Listing for Intellectual Disorder (12.05, paragraph B) is satisfied by an IQ score of 70 or below.

>  functioning but a reasonable depiction of her current level of socioemotional/behavioral distress.

(Tr. 400). Accordingly, the ALJ found that there was not evidence to support that Plaintiff's moderate intellectual disability was medically determined. (Tr. 19). It was entirely and exclusively within the ALJ's purview to weigh the credibility of this evidence. *See Selders*, 914 F.2d at 617.

At Step Three, the ALJ addressed the severity of Plaintiff's mental impairments to determine whether they met or equaled the listings for depressive, bipolar, and related disorders (12.04) or anxiety and obsessive-compulsive disorders (12.06).[5] (Tr. 20). Based on evidence of record, the ALJ determined that Plaintiff has moderate limitation in understanding, remembering, or applying information; mild limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; moderate limitation in adapting or managing oneself. (Tr. 20-21). Evidence included that Plaintiff watches television, plays on the computer, listens to the radio, prepares simple meals, washes dishes, sweeps the floor, does laundry; she isolates but does not have a problem getting along with others or with authority figures. (Tr. 20-21). Though Plaintiff implies that the ALJ dismissed the consultative exam entirely, and thus cannot make determinations about Plaintiff's limitations (R. Doc. 20 at 9), the evidence given to support each of the limitations above includes Plaintiff's representations about her daily activities in that exam.

While the evidence is indeed "scant" (R. Doc. 20 at 8), there was more than a mere scintilla of evidence for the ALJ to reasonably determine Plaintiff's limitations. *See Richardson*, 402 U.S. at 401. The ALJ's duty to develop the record does not require him to order new medical records where Plaintiff has failed to present them if he can reasonably make a determination regarding

---

[5] The ALJ evaluated based on these listings because he found at Step Two that Plaintiff's severe impairments included depressive disorder and anxiety disorder (Tr. 19).

Plaintiff's disability on the existing record. *See Brock*, 84 F.3d 726. Having reviewed the record and the ALJ's determination, the Court cannot find that there was not substantial evidence to support the ALJ's decision regarding Plaintiff's mental status; therefore, the Court finds that the ALJ need not have further developed the record.

Even if the Court had found that the ALJ failed to fully and fairly develop the record, we would still not find reversible error. The court may reverse the ALJ's decision if the claimant can show that "(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Jones*, 691 F.3d at 733. To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220. Here, Plaintiff has not established such prejudice. Plaintiff argues that the ALJ failed to fully develop the record when he did not order further evaluation of Plaintiff's mental status. (R. Doc. 20 at 8). But Plaintiff offers no evidence that further evaluation would produce different results from the examination already in evidence—deemed partially unreliable by the examiner and the ALJ. Plaintiff does not offer or suggest the existence of other evidence that would show Plaintiff was disabled at the time of her application; nor has Plaintiff pointed to evidence already in the record that was improperly evaluated. At the end of her brief, Plaintiff makes the conclusory statement that Plaintiff's intellectual capabilities satisfy the parameters of Listing 12.05 – Intellectual Disorder, but again Plaintiff does not demonstrate evidence that would have led the ALJ to determine such an impairment. (R. Doc. 20 at 10). Because Plaintiff cannot show prejudice, the Court will not reverse the Commissioner's decision.

## VI.     CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 14, 2024.

*[signature: Scott D. Johnson]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**